**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BENJAMIN JUREC,

              Plaintiff,

vs.                                            Case No. 3:18-cv-591-J-32JRK

WALTER P. RAWL & SONS, INC.,
a foreign profit corporation,

              Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

This cause is before the Court on Defendant Walter P. Rawl & Sons, Inc.'s Motion to Dismiss Amended Complaint, and Additional Motion to Strike, with Memorandum of Law (Doc. No. 31; "Motion"), filed August 22, 2018. In the Motion, Defendant seeks to dismiss with prejudice Count II of the First Amended Complaint (Doc. No. 30; "Amended Complaint"), filed August 8, 2018, for failure to state a claim upon which relief may be granted and seeks to strike certain allegations from Count I. See Motion at 1, 8.[2] Plaintiff opposes the relief sought in the Motion. See Plaintiff's Response to Defendant's Motion to Dismiss (Doc. No. 32; "Response"), filed September 5, 2018. On October 18, 2018, the Honorable Timothy J. Corrigan referred the Motion to the undersigned for the issuance of a report and

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] Defendant states that it is seeking dismissal without prejudice of Count I, see Motion at 8, 9, but Defendant does not develop argument in support of this request. Instead, Defendant's argument centers on striking particular subsections of Count I.

recommendation regarding an appropriate resolution. See Order (Doc. No. 33). For the reasons discussed below, the undersigned recommends that the Motion be granted only to the extent that Count II of the Amended Complaint be dismissed without prejudice, with leave to amend.

## II. Background / Amended Complaint

On June 20, 2017, Plaintiff Benjamin Jurec commenced this action in state court by filing a one-count complaint against Defendant Walter P. Rawl & Sons, Inc. for negligence. See Defendant Walter P. Rawl & Sons, Inc.'s Notice of Removal ("Notice of Removal") at Ex. A (Doc. No. 1-1); Complaint (Doc. No. 2), filed April 30, 2018. Defendant removed the matter to this Court on April 30, 2018. See Notice of Removal (Doc. No. 1). With leave of Court, Plaintiff filed the two-count Amended Complaint alleging negligence and strict liability. See Order (Doc. No. 29), entered August 8, 2018. This case arises out of injuries allegedly sustained by Plaintiff after being exposed to anhydrous ammonia while on Defendant's property. The allegations of the Amended Complaint are as follows.

At the time of the alleged incident, Defendant owned an 80-acre commercial farm ("the Farm"). Amended Complaint at 2 ¶¶ 5-6. The crops grown on the Farm were required to be packaged in ice in order to be shipped. Id. ¶ 9. The packaging was done in a commercial building located on the Farm that had an industrial refrigeration unit on its exterior for producing the ice used in packaging the crops. Id. 2-3 ¶¶ 9-10. The refrigeration unit contained "a pressurized storage tank and was set upon a large concrete slab on the exterior of the commercial building." Id. at 3 ¶ 10.

The pressurized storage tank contained 250 gallons of "an inherently dangerous, ultra-hazardous, and toxic chemical called anhydrous ammonia." Id. at 3, 4 ¶¶ 17, 11. Anhydrous ammonia is a "colorless gas with pungent, suffocating fumes, and is used as an

agricultural fertilizer and industrial refrigerant." Id. at 3 ¶ 13. "When liquid anhydrous ammonia is released from its container into the air, it expands rapidly, forming a large cloud that acts like a heavier-than-air gas for a period of time." Id. The risk of human exposure is greater with anhydrous ammonia than with other gases, and "symptoms of human exposure include eye, nose, throat irritation, difficulty breathing, wheezing, sputum, pulmonary edema." Id. Prior to Plaintiff's injury, the United States Environmental Protection Agency, issued a "chemical safety alert on Anhydrous Ammonia Theft, EPA-F-00-005, . . . explaining that anhydrous ammonia is a key ingredient in the illegal production of methamphetamines." Id. at 3-4 ¶ 14.

The concrete slab where Defendant's pressurized storage tank was located was not "fenced-in, was minimally lit by exterior lighting if at all, lacked motion sensor lighting, [and] failed to have on hand adequate safety measures to deal with human exposure . . . ." Id. at 4 ¶ 15. On about January 29, 2015, one of Defendant's employees learned that the pressurized storage tank had been broken into and emptied. Id. ¶ 16. As a result of the theft, some of the anhydrous ammonia was spilled near the tank. Id. ¶ 17. Thereafter, the tank was refilled and repaired at Defendant's direction. Id. at 4, 5 ¶¶ 16, 19. Defendant also "requested Flagler County Sheriff's officers conduct watch of the area in an attempt to prevent future thefts and/or to apprehend the individuals responsible for this theft." Id. at 5 ¶ 18.

On about February 4, 2015, Plaintiff, a Flagler County Sheriff's Deputy, was conducting watch of the area with Defendant's "consent, knowledge and permission . . . ." Id. ¶ 20. Defendant failed to inform Plaintiff and other Flagler County Sheriff's Officers of the "ultra-hazardous and inherently dangerous nature of the anhydrous ammonia, particularly when exposed to air, or to take any precautionary measures to prevent a second theft, when in the exercise of reasonable care it otherwise should have." Id. ¶ 21. While conducting the watch on February 4, 2015, Plaintiff "was exposed to anhydrous ammonia through inhalation

released, syphoned, stolen, and/or extracted from the pressurized storage tank on [Defendant's] property as a result of a second theft . . . ." Id. ¶ 22. Consequently, Plaintiff "suffered bodily injury resulting in pain and suffering, disability, mental anguish, loss of capacity for enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss earnings, loss of ability to earn money, and inconvenience." Id. at 10 ¶ 31.

Plaintiff asserts two counts against Defendant, one for negligence and one for strict liability. Id. at 6-10 (Count I - Negligence), 10 (Count II - Strict Liability).

In Count I, Plaintiff alleges that Defendant breached its non-delegable duty to Plaintiff of "reasonable care in handling, storing, utilizing, and securing the anhydrous ammonia stored on its premises, and to warn invitees, like [Plaintiff,] of the dangerous nature of anhydrous ammonia stored on its premises." Id. at 6 ¶ 28. Plaintiff states Defendant breached this duty in a number of ways, including in relevant part by: 1) violating Fla. Stat. § 893.13, id. at 7 ¶¶ 29(e)-(f); 2) violating American National Standards Institute ("ANSI") standard K61.1, id. at 7-8 ¶¶ 29(g)-(h); 3) violating Occupational Safety and Health Administration ("OSHA") standard 1910.111 (29 C.F.R. § 1910.111), id. at 8 ¶ 29(n); and 4) "failing to hire a private security company to conduct watches to prevent additional theft of anhydrous ammonia as opposed to benefitting from the services provided by the Flagler County Sheriff's Office," id. at 9 ¶ 29(s).

In Count II, Plaintiff alleges that Defendant is strictly liable for Plaintiff's injuries because "[a]t the time of the incident, Defendant . . . was operating a commercial agricultural business and improperly stored and secured on its property, an ultra-hazardous chemical, anhydrous ammonia." Id. at 10 ¶¶ 33-34.

### III. Arguments of the Parties

Defendant makes two arguments in the Motion. First, Defendant argues that Plaintiff "has not plausibly stated a claim for strict liability" because anhydrous ammonia is not ultra-hazardous. Motion at 3; see id. at 3-7. Citing to the Restatement of Torts, Defendant lists a number of factors relevant to determining whether an activity is ultra-hazardous and applies these factors to the facts alleged in the Amended Complaint. See id. at 4-7. Second, Defendant contends that the Court should strike a number of subsections of paragraph 29 of Count I. Specifically, Defendant asserts subsections (e)-(h) and (n) that allege Defendant violated Fla. Stat. § 893.13, ANSI standard K61.1, and OSHA standard 1910.111 should be stricken because these provisions and standards do not provide a private cause of action. Id. at 8-9. Defendant additionally contends that "as Plaintiff was not Defendant's employee, OSHA would create no duty between Defendant and Plaintiff." Id. at 8. Defendant argues subsection (s) that alleges Defendant breached its duty by failing to hire a private security company as opposed to benefitting from the services of the Sheriff's Office should be stricken because there is no "basis for such a duty under Florida law and the existence of such would seem unlikely." Id. at 9. According to Defendant, Plaintiff's "situation is not analogous to that of a traditional civilian business invitee who becomes a victim of a crime through negligent security." Id.

Responding, Plaintiff contends that Defendant's first argument regarding Count II is "couched as a legal argument that coyly veers into a factual discussion of this case, inappropriate for this type of Motion." Response at 4. Plaintiff asserts that the determination of whether anhydrous ammonia is ultra-hazardous is to be made by a jury as the finder of fact. Id. at 5. With respect to Defendant's second argument, Plaintiff argues that Defendant's violations of the Florida statute, OSHA, and the ANSI standard are evidence of negligence.

Id. at 9-12. Plaintiff further contends that "requesting and allowing a Flagler County Sheriff's officer like Plaintiff to perform watches and/or inspections of the anhydrous ammonia tank and storage area on its property, created a foreseeable zone of risk that he would be exposed to suffer personal injury from another anhydrous ammonia release due to theft." Id. at 14. According to Plaintiff, "Defendant had a choice between enacting appropriate security measures, including hiring a private security company to watch for additional thefts or to protect its storage tank, and requesting and/or allowing Flagler County Sheriff's officers to provide the services . . . at taxpayer cost." Id. at 13. Plaintiff requests leave to file a second amended complaint if the Court grants the relief requested by Defendant. Id. at 14.

### IV. Legal Standard for Motions to Dismiss and Motions to Strike

A pleading must contain, among other things, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought, which may include relief in the alternative or different types of relief. Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotation and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683-84 (11th Cir. 2001) (internal quotation and citation omitted). A plaintiff's factual allegations, even though taken as true and in the light most favorable to the plaintiff, must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 570; see

also Harper v. Lawrence Cty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (quotation and citation omitted); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

In reviewing and deciding a motion to dismiss premised on Rule 12(b)(6), Federal Rules of Civil Procedure ("Rule(s)"), "the court limits its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long City, 999 F.2d 1508, 1510 (11th Cir. 1993)); see also Contour Spa at the Hard Rock v. Seminole Tribe of Fla., 692 F.3d 1200, 1201 (11th Cir. 2012) (in reviewing an order on a motion to dismiss, stating that "[w]e take as true the facts alleged in [the] complaint and attached exhibits"). "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Rule 12(f) grants the Court the authority to strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "'[a] motion to strike is a drastic remedy' which is disfavored by the courts and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting Augustus v. Bd. of Pub. Instruction of Escambia Cty., 306 F.2d 862, 868 (5th Cir. 1962);[3] citing Poston v. Am. President Lines Ltd., 452 F. Supp. 586, 570 (S.D. Fla. 1978)).

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

## V. Discussion

### A. Count II - Strict Liability

Florida courts have adopted the doctrine of strict liability for ultra-hazardous or abnormally dangerous activity as established by Rylands v. Fletcher, [1868] L.R. 3 (HL) 330, 1868 WL 9885, and reformulated by the Restatement of Torts §§ 519 and 520 (Am. Law. Inst. 1938) and the Restatement (Second) of Torts (Am. Law. Inst. 1977) § 520. Peoples Gas Sys. v. Posen Const., Inc., No. 2:11-cv-231-FTM-29, 2011 WL 5525346, at *2 (M.D. Fla. Nov. 14, 2011) (unpublished); Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp., 460 So. 2d 510, 512-13 (Fla. 3d DCA 1984); Hutchinson v. Capelletti Bros., 397 So. 2d 952, 953 (Fla. 4th DCA 1981); Cities Serv. Co. v. State, 312 So. 2d 799, 802-03 (Fla. 2d DCA 1975).

An activity is ultra-hazardous, if it:

> (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and
>
> (b) is not a matter of common usage.

Restatement of the Law of Torts § 520 (Am. Law. Inst. 1938) (emphasis omitted). Moreover, generally, "one who carries on an ultra[-]hazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultra[-]hazardous, although the utmost care is exercised to prevent the harm." Id. at § 519 (emphasis omitted).

Florida courts consider six factors in determining whether an activity is ultra-hazardous or abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;

-8-

      (c) inability to eliminate the risk by the exercise of reasonable care;

      (d) extent to which the activity is not a matter of common usage;

      (e) inappropriateness of the activity to the place where it is carried on; and

      (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (Am. Law. Inst. 1977) (emphasis omitted); see, e.g., Peoples Gas Sys., 2011 WL 5525346, at *2-4; Great Lakes, 460 So. 2d at 512-13; Hutchinson, 397 So. 2d at 953; Cities Serv. Co., 312 So. 2d at 802-03. Some federal courts, applying Florida law, have considered these factors in ruling on motions to dismiss. See Peoples Gas Sys., 2011 WL 5525346, at *2-4; Graziuso v. Ocean Reef Club, Inc., No. 06-10085-CIV, 2007 WL 9702421, at *3 (S.D. Fla. Jan. 18, 2007) (unpublished); St. Cyr v. Flying J Inc., No. 3:06-cv-13-J-33TEM, 2006 WL 2175662, at *4 (M.D. Fla. July 31, 2006) (unpublished). "Any one of [these factors] is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability." Restatement (Second) of Torts § 520 cmt. f (Am. Law. Inst. 1977). However, "it is not necessary that each of them be present, especially if others weigh heavily." Id.

      Here, Plaintiff has failed to state a claim for strict liability. The allegation that Defendant "was operating a commercial agricultural business and improperly stored and secured on its property, an ultra-hazardous chemical, anhydrous ammonia," Amended Complaint at 10 ¶ 33, and the other allegations incorporated in Count II, are insufficient to properly plead a strict liability claim. Although Plaintiff is not required to allege all six of the Restatement factors to state a strict liability claim, Plaintiff alleges none of the factors and possibly alleges a factual basis for only two of the factors: existence of a high degree of risk of some harm to another

and likelihood that the harm that results from the activity will be great. See id. at 3 ¶ 13 (describing the symptoms of human exposure to anhydrous ammonia and stating that "the chances for humans to be exposed are greater than with other gases").

Moreover, at least some of the facts alleged in the Amended Complaint appear to be contrary to the factors. Based on the description of the Farm in the Amended Complaint, it does not appear that the storage of anhydrous ammonia was inappropriate to the place where it was carried on. The alleged ways in which Defendant breached its duty of reasonable care, alleged in Count I and incorporated in Count II, weigh against finding that there is an inability to eliminate the risk of storing anhydrous ammonia by the exercise of reasonable care. See Amended Complaint at 6-9 ¶ 29, 10 ¶ 32. The allegation that anhydrous ammonia "is used as an agricultural fertilizer and industrial refrigerant," id. at 3 ¶ 13, weighs in favor of finding that the storage of anhydrous ammonia is a matter of common usage. Notably, for an activity to be ultra-hazardous, its risk of serious harm cannot be eliminated by the exercise of the utmost care, and the activity cannot be a matter of common usage. Restatement of the Law of Torts § 520 (Am. Law. Inst. 1938). Thus, Count II of the Amended Complaint is due to be dismissed without prejudice, with leave to amend. See Graziuso, 2007 WL 9702421, at *3 (denying motions to dismiss strict liability claim after finding that the amended complaint alleged the Restatement factors and sufficient facts supporting those factors); St. Cyr, 2006 WL 2175662, at *4 (dismissing strict liability counts after finding, inter alia, that "the danger involved in the sale of propane can easily be eliminated by the exercise of reasonable care" and that "the sale of propane at a filling station, such as [the d]efendant's, is a rather common activity").

The undersigned further notes that the strict liability count (Count II) improperly incorporates by reference the allegations of the negligence count (Count I), which results in

Count II containing irrelevant legal conclusions and facts. See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

**B. Count I - Negligence**

Defendant's request to strike subsections (e)-(h) and (n) from the Amended Complaint pursuant to Rule 12(f) is due to be denied. The undersigned finds that Plaintiff's allegations are not immaterial because violations of Fla. Stat. § 893.13, 29 C.F.R. § 1910.111, and/or ANSI standard K61.1 may be evidence of negligence. See Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231, 1238 (5th Cir. 1982) (recognizing that "[a]lthough OSHA creates no private right of action,[ ] violation of an OSHA regulation is evidence of negligence . . ." (citation omitted));[4] deJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198, 201 (Fla. 1973) (holding that "[v]iolations of statutes, other than those imposing a form of strict liability, may be [e]ither negligence per se [o]r evidence of negligence").[5] To the extent Defendant seeks to strike subsections (e)-(f) and (n) because Fla. Stat. § 893.13 and 29 C.F.R. § 1910.111 do not provide a private cause of action, this argument is misplaced. Plaintiff's claim under Count I is for negligence, Plaintiff is not asserting claims for violations of Fla. Stat. § 893.13 or 29 C.F.R. § 1910.111. Whether Defendant violated this Florida statute or OSHA is not determinative of whether Plaintiff has stated a claim for negligence.

Likewise, Defendant's request to strike subsection (s) of paragraph 29 that alleges Defendant benefitted from the services of the Flagler County Sheriff's Office as opposed to hiring a private security company is due to be denied. This allegation is potentially relevant

---

[4] In Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit rendered after September 30, 1981.

[5] Defendant's argument that Plaintiff was not Defendant's employee is unavailing. Defendant offers no legal basis or factual support for the argument, and given the fact-intensive nature of that issue, it is inappropriate for resolution on a motion to dismiss and/or to strike.

to whether Defendant owed a duty of care to Plaintiff; specifically, whether Defendant created a foreseeable zone of risk. Thus, the undersigned declines to recommend striking subsections (e)-(h), (n), and (s) of paragraph 29 from the Amended Complaint.

### VI. Conclusion

Based on the foregoing, the undersigned finds that the Motion is due to be granted in part and denied in part. Accordingly, it is

**RECOMMENDED THAT**:

1. Defendant Walter P. Rawl & Sons, Inc's Motion to Dismiss Amended Complaint, and Additional Motion to Strike, with Memorandum of Law (Doc. No. 31) be **GRANTED in part** and **DENIED in part**.

2. The Motion be **GRANTED** to the extent that Count II of the First Amended Complaint (Doc. No. 30) be dismissed without prejudice, with leave to amend.

3. The Motion be otherwise **DENIED**.

4. Plaintiff be permitted to file a second amended complaint repleading Count II within **fourteen (14) days** of the entry of an Order on the Motion.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 29, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record